IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARRICK LANG HUNTER,

               Plaintiff,                        CV-05-215-ST

     v.                                  FINDINGS AND
                                                 RECOMMENDATION

ALAN TRAUTWEIN; JERRI JARMER; and
LARRY MONAGON,

               Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Darrick Lang Hunter ("Hunter"), filed this action under 42 USC § 1983 ("§ 1983") on February 16, 2005, alleging that his rights under the First Amendment were violated by his parole officer, defendant Alan Trautwein ("Trautwein"), and two hearings officers who work for Multnomah County, defendants Jerri Jarmer ("Jarmer") and Larry Monagon ("Monagon"). Specifically, Hunter alleges that in retaliation for his filing of grievances, Trautwein filed false violations reports which Jarmer and Monagon then used as a

1 - FINDINGS AND RECOMMENDATION

basis for recommending revocation of Hunter's parole and imposing additional jail terms on

Hunter.  Hunter also alleges that Trautwein violated his right to practice his religion by refusing

to allow him to be on the grounds of his church without Trautwein's prior written approval, even

when minors are not present.  Hunter seeks $450,000.00 in compensatory and punitive damages.

Defendants have now filed a Motion for Summary Judgment (docket #39) against all

claims, either because they are entitled to immunity or by operation of the rule in *Heck v.*

*Humphrey*, 512 US 477 (1994).  For the reasons that follow, the motion should be GRANTED.

## FINDINGS

### I.  Undisputed Material Facts

Hunter was released from prison on June 10, 2003, and placed on post-prison supervision

until February 26, 2007, following his conviction in Multnomah County for Sexual Abuse in the

First Degree.  Affidavit of Agnes Sowle ("Sowle Affidavit"), Exhibit 1.  In conjunction with the

State Board of Parole and Post-Prison Supervision ("Parole Board") and the Department of

Corrections, local supervisory authorities, including Multnomah County parole officers and

hearings officers, supervise Hunter.  *See* ORS 144.107 (noting that Parole Board and Department

of Corrections adopt rules governing sanctions and procedures for sanctions for violations of the

conditions of post-prison supervision in consultation with local supervisory authorities).

Among other things, the Parole Board's Order of Supervision Conditions dated June 3,

2003, which sets forth the terms of Hunter's release, requires Hunter to participate in "hormone

or antiandrogen treatment" and prohibits him, among other things, from:  (1) being "on any

church grounds where any minors are present without the written permission of [his] parole

officer;" (2) "contacting a person under 18 years of age without the prior written approval of the

[Parole] Board, Supervisory Authority, or Supervising Officer;" (3) "frequenting, without the prior written approval of the [Parole] Board, Supervisory Authority, or Supervising Officer, a place where persons under 18 years of age regularly congregate."  Sowle Affidavit, Exhibit 1, p. 1 (capital lettering omitted).

The June 3, 2003 Order of Supervision Conditions provides that Hunter may seek administrative review of his conditions of post-prison supervision directly to the Parole Board and/or may seek judicial review by filing a petition for review in the State of Oregon Court of Appeals.  *Id*, Exhibit 1, p. 4.

Hunter challenged several of the conditions of his parole, first by submitting administrative review requests with the Parole Board.  Sowle Affidavit, Exhibit 2.  On July 10, 2003, the  Parole Board issued an "Administrative Review Response," finding that the imposition of the conditions in the June 3, 2003 Order of Supervision Conditions did not violate any rules, policies, statutes, or constitutions.  Sowle Affidavit, Exhibit 2, p. 2.  With regard to the challenge to the prohibition of being on church grounds when minors were present without the written permission of his parole officer, the Parole Board stated that the condition "is not a total prohibition of your being on any church grounds as you are allowed to be there if your parole officer deems it appropriate for you to be there when minors are present.  You may also be on church grounds when there are no minors present."  *Id.*

On August 13, 2003, Hunter was arrested by Trautwein.  Affidavit of Derrick Lang Hunter ("Hunter Affidavit"), ¶ 21.  Apparently as a result of a violation report authored by

Trautwein, Hunter was sanctioned to a 75 day revocation sentence.[1]  *Id* at ¶ 24.  Hunter apparently served that sanction and was then placed back on parole supervision some time in late 2003.

On November 6, 2003, Hunter filed a lawsuit in this court, *Hunter v. Trautwein, et al.,* Civil No. 03-1524-MO ("*Hunter I*"), challenging the legality of the condition that he participate in chemical treatments to reduce the likelihood that he would commit another sexual crime while on parole.  District Judge Michael W. Mosman dismissed the case on December 15, 2003, on the grounds that the holding in *Heck* precluded a § 1983 challenge to that post-prison supervision condition.  Sowle Affidavit, Exhibit 3.

On January 29, 2004, when Hunter was leaving Trautwein's office, Trautwein overheard him talking to a friend about attending the same men's group meeting at their church.  Hunter Affidavit, ¶ 27.  After hearing that Hunter had been on church grounds, Trautwein threatened to arrest Hunter, who responded by showing Trautwein the July 10, 2003 Administrative Review Response which stated that the conditions of Hunter's release were "not a total prohibition" of Hunter's being on church grounds, but that he was allowed to go onto church grounds "when there are no minors present."  Sowle Affidavit, Exhibit 2, p. 2.  Trautwein responded that he did not care whether minors were present or not and that Hunter could either accept a sanction of 40 hours of community service, or be arrested and go to jail.  Hunter Affidavit, ¶ 27.  Hunter accepted the community service sanction.  *Id*.

---

[1] This sanction was apparently imposed as a result of Hunter's refusal to participate in hormone or antiandrogen treatment program.  *See Hunter v. Trautwein, et al.,* Civil No. 03-1524-MO, Order dated December 18, 2003, p. 2 (docket #14).

On March 4, 2004, Hunter missed a group therapy class due to a medical condition that made him sleep for long periods of time. *Id* at ¶¶ 29-30. Trautwein told Hunter's therapist to terminate him from treatment for missing the class. *Id* at ¶ 30. When Hunter called Trautwein to complain, Trautwein told him to report to his office with his medical paperwork and medication. *Id*. Upon his arrival at Trautwein's office on March 10, 2004, Hunter was again arrested. *Id* at ¶ 31.

After he was released on May 21, 2004, Hunter "decided to refuse to report to Trautwein" and moved out of state. *Id* at ¶ 33. Hunter was arrested for absconding supervision on August 31, 2004. *Id* at ¶ 34. On October 1, 2004, Jarmer conducted a violation hearing, found Hunter in violation of his conditions of supervision, and recommended imposition of a 120 day revocation sentence, which was set to expire on December 28, 2004. *Id* at ¶¶ 34-35; Plaintiff's Exhibit 16, pp. 2, 5 (Bates Nos. 100736 and 100739).

On December 16, 2004, while Hunter was still in jail serving that 120 day revocation sentence, Trautwein received a police report from Portland Police Detective Liz Cruthers, stating that Portland Police had investigated complaints by a female victim that she had been kidnapped and raped approximately six months previously in late June or early July 2004 at the age of 15. Plaintiff's Exhibit 16, p. 1. The victim identified Hunter as the perpetrator from a photomontage. *Id*. She told Portland police that Hunter had grabbed her off the sidewalk, forced her in to the back seat of a vehicle, taken her to a more remote location and raped her, but that she had delayed reporting it because she "just wanted to forget about it." *Id* at 1. She also reported that Hunter had asked her if she was willing to model for him, told her he wanted her to be in a pornographic movie, and had shown her pictures of naked females, including some where Hunter

5 - FINDINGS AND RECOMMENDATION

was "on top of the naked females." *Id*. The police report also revealed that Portland Police detectives spoke with at least three other females, each aged 14 and two of whom previously attended the same church as Hunter. *Id* at 1-2. Those females stated that Hunter told them he took both "regular" and pornographic photos and asked them whether they might be interested in doing some modeling. *Id* at 2. One of the females went to a hotel room Hunter was staying in with three of her friends and Hunter gave each of them money. *Id*.

Pending the filing of additional charges of violations by Trautwein, the Parole Board issued a Suspend and Detain Order and as a result, Hunter was not released from jail on December 28, 2004. Plaintiff's Exhibit 16, p. 5 (Bates No. 100739). Instead, on January 11, 2005, Monagon provided Hunter with a "Morrissey packet,"[2] at which time Hunter requested additional time to decide how to proceed with his hearing. *Id* at 3 (Bates No. 100737).

On January 17 and 18, 2005, Hunter wrote letters to Monagon asserting that the process initiated to determine whether he violated the conditions of post-prison supervision violated *Morrisey* (Plaintiff's Exhibit 14) and that Trautwein had no statutory or administrative authority to initiate a violation report against him because he was no longer on "active supervision" (Plaintiff's Exhibit 15).

On January 28, 2005, Monagon contacted Hunter in jail and inquired how Hunter wanted to proceed with his hearing. Plaintiff's Exhibit 16, p. 3 (Bates No. 100737). Hunter refused to sign the Notice of Rights form, which Monagon construed as a failure to participate in the

_____

[2] In *Morrisey v. Brewer*, 408 US 471, 1972), the Supreme Court established minimum guidelines to assess whether parole revocation proceedings conform to due process.

hearing process.  *Id*.  Monagon recommended that Hunter's supervision be revoked and a sanction of 120 days be imposed.  *Id* at 4 (Bates No. 100738).

On February 4, 2005, Monagon provided Hunter with a Notice of Rights and an Objection form concerning objecting to his score on the test used to determine if an offender should be designated a predatory sex offender.  Hunter Affidavit, ¶ 42; Plaintiff's Exhibit 17. Hunter refused to sign the forms.  Hunter Affidavit, ¶¶ 43-44; Plaintiff's Exhibit 18.

On February 16, 2005, Hunter filed this case, alleging that defendants' actions violate his First Amendment rights to file grievances and to practice his religion.  Specifically, Hunter alleges that Trautwein filed false reports about his conduct while on supervised release and flatly prohibited him from being on church grounds at all, and that the hearings officers have retaliated against him by imposing sanctions against him for exercising his right to file grievances.

On June 28, 2005, the Parole Board modified Hunter's post-prison supervision conditions to include a Predatory Sexual Offender designation.  Hunter Affidavit, ¶ 45.

On July 11, 2005, Hunter filed a Motion for a Temporary Restraining Order (docket #13) alleging that he should not be subject to the conditions of parole as ordered by the Parole Board. Defendants responded that *Heck* and its progeny barred Hunter's application for a temporary restraining order.  On July 25, 2005, the Honorable Garr M. King denied Hunter's motion holding, in part, that his § 1983 challenge to conditions of his parole is prevented by *Heck*. Order dated July 25, 2005 (docket #19).

On September 7, 2005, Hunter filed a Motion for a Preliminary Injunction (docket #21) challenging his continued incarceration as well as his term of post-prison supervision. Defendants again argued that *Heck* barred Hunter's request.  On October 18, 2005, Judge King

again denied Hunter's motion, holding, in part, that *Heck* prohibits a § 1983 challenge to conditions of Hunter's parole.  Order (docket #30).

On November 14, 2005, Hunter once again sought an injunction, challenging the conditions of his parole, specifically "(1).  Supervision under the Special Supervision Team (SST)[;] (2). Global Positioning Satellite Electronic Monitoring [;] (3) Community Notification [;] (4) Any conditions or other restrictions ordered by the SST that was [*sic*] not approved by the [Parole Board]."  Plaintiff's Motion for Temporary and Permanent Injunction (docket #31), p. 1. On December 15, 2005, Judge King once again denied Hunter's motion, holding that *Heck* prohibits a § 1983 challenge to conditions of his parole.  Order (docket #37).

## II.  Defendants' Motion for Summary Judgment

Defendants argue that Hunter's claims under § 1983 are barred, either because defendants are entitled to immunity or by operation of the rule in *Heck*.

### A.  Hearings Officers Jarmer and Monagon

Defendants Jarmer and Monagon assert that they are entitled to absolute quasi-judicial immunity from Hunter's claims.  This court agrees.

#### 1.  Legal Standard

The "Supreme Court has yet to decide whether any 'parole officials' are entitled to absolute immunity and, if so, which officials and for what activities."  *Murphy v. Kitzhaber*, 2006 WL 2399372 (D Or, August 17, 2006), citing *Martinez  v. California*, 444 US 277, 284 (1980).  In the Ninth Circuit, such officials are entitled to absolute immunity when they are "performing a duty functionally comparable to one for which officials were rendered immune at common law."  *Miller v. Gammie*, 335 F3d 889, 897 (9th Cir 2003) (*en banc*).  Executive

officials performing quasi-judicial functions are immune. *See Swift v. California*, 384 F3d 1184,

1190 (9th Cir 2004); *Bermudez v. Duenas*, 936 F2d 1064, 1066 (9th Cir 1991); *Sellars v.*

*Procunier*, 641 F2d 1295, 1302-03 (9th Cir 1981). Thus, an "official who adjudicates parole

decisions is entitled to quasi-judicial immunity for those decisions, and actions integral to those

decisions." *Swift*, 384 F3d at 1191.

## 2. Analysis

Jarmer and Monagon are hearings officers employed by Multnomah County. As part of

their job responsibilities, they make recommendations concerning disposition of reports of parole

violations. Hunter alleges that Jarmer and Monagon conducted violation hearings based on

reports (allegedly false) filed by Trautwein and found Hunter in violation of his parole

conditions, which ultimately resulted in Hunter being sanctioned to multiple months in jail.

Complaint, pp. 10-13. Jarmer conducted a violation hearing on October 1, 2004, based on a

report by Trautwein. *Id* at 10. Hunter alleges that, following that hearing, Jarmer revoked his

parole and sanctioned him to 120 days jail time. *Id*. Hunter also alleges that when he later saw

Jarmer in his jail dormitory, Jarmer said that Trautwein's "case management system notes

painted a bad picture of Hunter and that [Jarmer] would suggest that Hunter quit filing

grievances against Trautwein to keep peace between Hunter and Trautwein." *Id* at 11.

Following the expiration of that 120-day sanction, Hunter was not released from jail

because Trautwein was preparing to request additional jail time. *Id* at 11-12. Hunter alleges that

Monagon ignored his complaints that the hearings process was unconstitutional, refused to

investigate Hunter's complaints, and on "January 28, 2004, attempted to pressure Hunter into

waiving his rights and accept a 120 day jail sanction." *Id* at 12. When Hunter informed

Monagon that he "couldn't make an informed choice how to proceed with a hearing," Monagon found him guilty of a parole violation and imposed a jail sentence of 180 days.  *Id* at 12-13. Hunter also alleges that Monagon denied Hunter's request for a hearing to challenge his designation as a dangerous predatory sexual offender.  *Id* at 13.

The record does not support an inference that Jarmer or Monagon took any actions outside the scope of the immunity afforded executive officials performing quasi-judicial functions.  Hunter disagreed with the decisions made by Jarmer and Monagon, took issue with whether the forms Monagon provided were constitutionally or statutorily adequate, and alleges that the decisions were based on false reports submitted by Trautwein.  However, an official entitled to absolute immunity is not "deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the clear absence of all jurisdiction."  *Stump v. Sparkman*, 435 US 349, 356-57 (1978) (internal quote marks and citation omitted).  Nothing in the record suggests that Jarmer and Monagon were acting in the absence of all jurisdiction.  Accordingly, they are entitled to immunity from Hunter's claims and their request for summary judgment against those claims should be granted.

### B.  Parole Officer Trautwein

Because Jarmer and Monagon are entitled to absolute quasi-judicial immunity from Hunter's claims, the only remaining issue is whether any claim can be sustained against Trautwein, Hunter's parole officer.

Trautwein also asserts that Hunter's claims are entirely barred by operation of the rule in *Heck*.  Furthermore, as did Jarmer and Monagon, Trautwein argues that he is entitled to absolute

10 - FINDINGS AND RECOMMENDATION

quasi-judicial immunity. Alternatively, Trautwein argues that he enjoys qualified immunity

from Hunter's claims. After an exhaustive review of the evidence in this case, this court

concludes that it need not address the immunity issue because Hunter's claims are either barred

by *Heck* or simply allege no constitutional violation.

### 1. Application of *Heck*

*Heck* mandates that when a state prisoner seeks relief under § 1983, the court must

consider whether a judgment in favor of the prisoner would imply the invalidity of the prisoner's

conviction or sentence. If so, then the § 1983 claim is barred unless the prisoner can show that

his conviction or sentence has already been invalidated. *Harvey v. Waldron*, 210 F3d 1008,

1013 (9th Cir 2000). Because parole and probation are considered part and parcel of a criminal

defendant's original sentence, *United States v. Brown*, 59 F3d 102, 104-05 (9th Cir 1995), Hunter

may not successfully pursue a claim under § 1983 challenging a parole revocation decision or a

particular condition of parole until he first invalidates the revocation or the supervision

condition. *See Butterfield v. Bail*, 120 F3d 1023, 1024 n1 (9th Cir 1997) (citing cases in parole

context). Thus, to the degree that Hunter's allegations may be construed to object to parole

revocation decisions made against him or to the specific conditions imposed by the Parole

Board, his claims are barred by *Heck*.

Based on *Heck*, this court previously rejected Hunter's challenge to the imposition of a

condition requiring him to participate in hormone or antiandrogen treatment. *See Hunter I.* In

this case, Hunter makes a number of assertions about the propriety of the procedures used to

subject him to certain post-prison supervision conditions or to evaluate Trautwein's claims of

post-prison supervision violations. *See, e.g.*, Hunter Affidavit, ¶¶ 5-9 (alleging flawed pre-

release evaluations), 23, 35, and 41 (alleging flawed hearing procedures on September 4, 2003, October 1, 2004, and January 28, 2005). However, he does not expressly seek reversal of the parole revocation decisions or removal of any of the conditions of his post-prison supervision. Instead, he alleges he was subjected to retaliation for filing grievances and for exercising his First Amendment right to practice his religion, and seeks nearly half a million dollars in damages to compensate him for those alleged violations. In order to prove those retaliation claims, Hunter has to show that: (1) he was retaliated against for exercising his constitutional rights; and (2) the alleged retaliation does not advance legitimate penological goals. *Bruce v. Ylst*, 351 F3d 1283, 1288 (9th Cir 2003); *also see Wilson v. City of Foutain Valley*, 272 F Supp2d 1178, 1188-89 (CD Cal 2004) (applying the same test to a claim for retaliation by parolees who are not physically incarcerated).

The record reveals that since his release, Hunter's parole has been revoked at least four times. Hunter Affidavit, ¶¶ 21, 23-24 and Plaintiff's Exhibit 11 (September 17, 2003 revocation for failure to comply with the condition that Hunter participate in hormone treatment); Hunter Affidavit, ¶¶ 32-33 (revocation some time between March 18, 2004 and May 21, 2004, apparently for violating the condition not to be on church grounds without prior written approval); *id* at ¶¶ 34-37 (October 1, 2004 revocation for absconding from supervision); and *id at* ¶ 41 and Plaintiff's Exhibit 16 (revocation hearing January 28, 2005 and report dated February 1, 2005 recommending revocation for failing to obey all laws and having contact with minors without permission of his parole officer by kidnapping and raping a 15 year old victim).

With regard to Trautwein's involvement in those proceedings, Hunter alleges that Trautwein retaliated against him by: (1) receiving unsubstantiated reports of parole violations;

(2) investigating those reports; (3) filing false violation reports; and then (4) recommending that Hunter be arrested and sanctioned to additional jail time.  To the degree that Trautwein's alleged retaliation involves filing reports requesting Hunter's arrest and recommending the revocation of Hunter's parole, those acts necessarily imply the invalidity of the parole revocation decisions based on Trautwein's reports and recommendations.  This is precisely the type of claim foreclosed by *Heck*.  *Butterfield, supra.*

Accordingly, Hunter's claims against Trautwein for filing false violation reports and recommending revocation of his parole are barred by *Heck* unless and until Hunter successfully challenges the probation revocation decisions directly attributable to Trautwein's allegedly retaliatory conduct.

### 2.  No Constitutional Violation Regarding Church Grounds

As a second claim against Trautwein, Hunter alleges that Trautwein violated his right to practice his religion by refusing to allow him to be on church grounds with prior written approval, even when minors are not present.  Even if *Heck* does not bar this claim, the record reveals that is fatally flawed for another reason, namely that there is no evidence of any constitutional violation.

Shortly after issuance of the Parole Board's June 3, 2003 Order of Supervision Conditions, which prohibits Hunter from being "on any church grounds where any minors are present without the written permission of [his] parole officer," Hunter submitted an administrative review request arguing that the condition violated his First Amendment rights.  Plaintiff's Exhibit 2.  The Parole Board rejected that argument, clarifying that Hunter was not flatly prohibited from being on church grounds, but did need the written authorization of his

parole officer to be there when minors are present.  Plaintiff's Exhibit 3, p. 2.  This restriction

was based on evidence that Hunter's 1997 convictions involved sexual abuse of multiple

children while on church grounds or in a church van.  *See* Plaintiff's Exhibit 1, p. 2.

Hunter contends that, beginning on January 29, 2004, Trautwein flatly prohibited him

from going to church, despite the more limited scope of the Parole Board condition which only

prohibits him from being there when minors are present.  However, a searching review of the

record does not support this contention.  The January 29, 2004 Sex Offender Action Plan

("SOAP") initially authored by Trautwein does not mention the condition regarding church

grounds.  Plaintiff's Exhibit 22, p. 2.  After overhearing Trautwein discussing being on church

grounds to attend a men's group meeting, Trautwein added:  "No church attendance without

[Parole Officer] approval."  Plaintiff's Exhibit 5.  A February 23, 2004 SOAP simply states:

"No church attendance / Not to be on church grounds."  Plaintiff's Exhibit 6.  The two SOAPs

dated May 24, 2004 (Plaintiff's Exhibit 7) and June 9, 2004 (Plaintiff's Exhibit 8) both reiterate

that, consistent with the Parole Board's Administrative Review Response from a year earlier

(Plaintiff's Exhibit 3), church attendance or being on church grounds is not flatly prohibited, but

requires prior written approval from the Parole Officer.  In short, the record wholly undercuts

Hunter's claim that Trautwein trammeled his First Amendment rights by prohibiting him from

attending church at all.

The only reasonable reading of the record is that, in an entirely permissible attempt to

enforce the church grounds condition imposed by the Parole Board, Trautwein insisted on prior

written approval for visits to church grounds by Hunter.  Hunter's apparent position is that the

Parole Board's Administrative Review Response, allowing him to "be on church grounds when

there are no minors present" (Plaintiff's Exhibit 3, p. 2), gives him *carte blanche* to be on church grounds with or without Trautwein's approval as long as no minors are present.  In that event, however, Trautwein would be left to guess as to when Hunter was on church grounds and set the stage for a parole revocation hearing debate over whether or not minors were present on the church grounds at the same time as Hunter.  Such a reading of the Parole Board's decision is untenable.

### 3.  Remaining Arguments

Because Hunter's claims against Trautwein are either barred by *Heck* or simply legally insufficient, this court need not and does not address whether Trautwein is entitled to either quasi-judicial or qualified immunity.

## RECOMMENDATION

For the reasons stated above, defendants' Motion for Summary Judgment (docket #39) should be GRANTED as to all claims, and Judgment should be entered for defendants and against plaintiff.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due **October 23, 2006.**  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

///

15 - FINDINGS AND RECOMMENDATION

**<u>NOTICE</u>**

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED this 4th day of October, 2006.


/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge